IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**STATE FARM FIRE AND CASUALTY CO.**

    **Plaintiff,**

    v.

**DAVID CHRISTIE,** *et al.***,**

    **Defendants.**

Case No. 10-CV-2699

## MEMORANDUM AND ORDER

Plaintiff State Farm Fire and Casualty Company ("State Farm") filed this suit seeking a declaratory judgment that it has no duty to indemnify defendants David Christie, Alexander Glenn, and D.J. Christie, Inc. ("D.J. Christie")[1] for a judgment entered against them in *Meyer v. Christie*, No. 07-2230-CM, 2007 WL 3120695 (D. Kan. Oct. 24, 2007) ("*Christie I*"). The matter before the court is State Farm's Amended Motion for Summary Judgment (Doc. 72).

**I. Facts**

    **A. The Underlying Case:** *Christie I*

*Christie I* concerned a failed joint venture between Alan Meyer, John Pratt, and Dovetail Builders 2, LLC (the "*Christie I* Plaintiffs")[2] and defendants. The parties intended for the development of a residential housing complex in Junction City, Kansas known as "The Bluffs." State Farm retained an attorney to defend the insured. The *Christie I* Plaintiffs tendered a settlement offer of $1,200,000.00. Defendants offered to settle for $300,000, but State Farm refused to contribute the full amount of the policy limits towards settlement. Therefore, eight counts against defendants—breach of

---

[1] The insured, D.J. Christie, Inc., is a Texas corporation registered to do business in the State of Kansas. Defendant David Christie was the president and secretary of D.J. Christie, Inc. and a director on D.J. Christie, Inc.'s board of directors.
[2] Originally, the *Christie I* Plaintiffs were named as defendants in this case but were dropped in State Farm's Amended Complaint. (Doc. 27.)

-1-

joint venture agreement, breach of fiduciary duties, wrongful dissociation, civil conspiracy, unjust enrichment, accounting, constructive trust, and injunctive relief—proceeded to trial. The first four of those were submitted to the jury.

At trial, the *Christie I* jury found that defendants Christie and Glenn breached the joint venture agreement, violated fiduciary duties, wrongfully dissociated from the joint venture, and conspired to take the opportunity to develop The Bluffs for themselves. (Doc. 72-1 at 1.) Finding liability against defendants, the court then submitted the count of unjust enrichment to the jury.[3] In the end, the jury awarded damages totaling $9,196,345.00. (*Id*. at 2.) On June 16, 2009, the court entered judgment in favor of the *Christie I* Plaintiffs and against defendants.[4]

### B. State Farm's Policy

The issue in the present case is Business Policy 91-B5-4107-7 (the "Policy"), which State Farm issued to D.J. Christie, Inc. The following facts are undisputed by the parties. The Policy insured D.J. Christie, Inc. for the period of March 2005 through March 2006. (Doc 72-8.) The Policy insured business liability, which applied "[t]o advertising injury caused by an occurrence committed in the coverage territory during the policy period. The occurrence must be committed in the course of advertising your goods, products or services." (*Id*. at 23.) The Policy defined "advertising injury" as an "injury arising out of one or more of the following offenses . . . "misappropriation of advertising ideas or style of doing business; or infringement of copyright, title or slogan." (*Id*. at 33.) The Policy defined "occurrence" (in relevant part) as "the commission of an offense, or a series of similar or related offenses, which results in personal injury or advertising injury." (*Id*. at 35.) The Policy

---

[3] If defendants were not found liable, there could be no unjust enrichment. Hence, the reason why the claim was submitted after the others.
[4] On appeal, the Tenth Circuit affirmed in part and reversed in part. *Meyer v. Christie*, 634 F.3d 1152 (10th Cir. 2011). The Tenth Circuit held that the award for breach of joint venture/partnership agreement was inconsistent with the award for *quantum meruit* and required the *Christie I* Plaintiffs to elect one or the other. *Id*. at 1162. The *Christie I* Plaintiffs elected to accept damages and forego *quantum meruit*. The court also reversed the civil conspiracy claim, but that reversal is immaterial to the resolution of this case.

excluded an advertising injury arising out of a "breach of contract other than misappropriation of advertising ideas under an implied contract." (*Id*. at 27.)

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the record's evidence and reasonable inferences in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "[T]here must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. Duty to Indemnify

In the insurance context, the duty to indemnify is a requirement that, if triggered, requires the insurer to pay a judgment entered against its policyholder following a trial or settlement. The duty to indemnify is narrower than the duty to defend. *Freightquote.com, Inc. v. Hartford Cas. Ins. Co.*, 397 F.3d 888, 894 (10th Cir. 2005); *see also Kan. Health Care Stabilization Fund v. St. Francis Hosp.*, 203 P.3d 33, 44 (Kan. App. 2009). The duty to indemnify is "determined by the facts as they are established at trial or as they are finally determined by some other means, such as settlement." *Freightquote.com*, 397 F.3d at 894–895. The burden to prove coverage under the policy lies with the insured. *Hartford Fire Ins. Co. v. Vita Craft Corp.*, 911 F. Supp. 2d 1164, 1176 (D. Kan. 2012).

### C. Interpretation of an Insurance Policy

The interpretation of an insurance policy is a question of law. *Id.* Courts use the plain and ordinary meaning of an insurance policy's terms, unless the parties have expressed otherwise. *Id.* Ambiguity exists when, after a natural and reasonable interpretation, the meaning of a contract's provisions or language is doubtful or conflicting. *Id.* (citing *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 810 P.2d 283, 285 (1991)). Whether an insurance contract is ambiguous is determined by what a reasonably prudent insured would understand the language to mean—not the insurer's intended meaning. *Id.* If ambiguity exists, courts construe the construction or meaning of the terms most favorable to the insured; if no ambiguity exists, courts must enforce the contract according to its terms. *Id.*

## III. Analysis

State Farm's motion for summary judgment addresses two issues: (1) State Farm's request for a declaratory judgment, that it had no duty to indemnify, and (2) defendants' counterclaim for breach of contract. The court will address each.

### A. Duty to Indemnify

State Farm argues that it has no duty to indemnify because defendants have not shown the *Christie I* jury found defendants liable with respect to any advertising injury, as defined (and covered) under the Policy. State Farm points out that there were eight theories of recovery against defendants in *Christie I*—none of which concerned advertising. State Farm therefore reasons that the Policy does not cover defendants' injuries as found by the jury in *Christie I*.

#### 1. The *Christie I* Jury Verdict

Defendants maintain the Policy's advertising injury provision covers the damages awarded by the *Christie I* jury. Defendants concede the fact that they wrongfully took the *Christie I* Plaintiffs'

proprietary property—conceptual designs of The Bluffs.  But defendants draw the following distinction:  It is the advertising of the *Christie I* Plaintiffs' PowerPoint that defendants misappropriated (containing proprietary concept and design ideas for the apartment complex) and the subsequent advertising of The Bluffs as defendants' own work that is the wrongful taking.  According to defendants, they engaged in advertising actions that included defendants' (1) exhibition of the *Christie I* Plaintiffs' proprietary PowerPoint presentation at a Las Vegas, Nevada trade show and at the City Commission of Junction City, Kansas; (2) participation in the dissemination of a collection of various media articles dating from 2005 to 2008, featuring The Bluffs and defendants' role in its construction; and (3) display of a sign outside The Bluffs during its construction, featuring concept art of The Bluffs alongside the D.J. Christie, Inc. logo.  These advertisements represented The Bluffs as defendants' own work, which led to tenants who paid defendants rent, which resulted in defendant's unjust enrichment.  As such, these advertising actions, defendants argue, underlie the jury's findings, particularly their award of damages for unjust enrichment.

Defendants' argument fails for two reasons.  First, defendants ignore the context of the jury's deliberations.  Excluding civil conspiracy, the *Christie I* court submitted three causes of action to the jury: wrongful dissociation of the joint venture, breach of the joint venture agreement, and breach of fiduciary duties.  The jury found liability against defendants.  Accordingly, the court then submitted the claim of unjust enrichment to the jury, and the jury awarded damages for unjust enrichment.  The court believes that, contrary to defendants' argument, those damages logically flow from the three causes of actions previously submitted to the jury.[5]  In other words, the jury found defendants were unjustly enriched because they wrongfully dissociated the joint venture, thereby breaching the joint

---

[5] Although the Tenth Circuit reversed the civil conspiracy verdict on appeal, the language of that count, as submitted to the jury, reinforces the court's conclusion in this case.  The jury form reads: "Do you find that defendants conspired to wrongfully take the opportunity to develop The Bluffs Apartments for themselves and without plaintiffs?" (Doc 72-1 at 2.)  The court notes the jury was not asked to consider whether the defendants conspired to wrongfully take *advertising ideas*.

venture agreement with and fiduciary duties to the *Christie I* Plaintiffs—*not* because defendants improperly advertised The Bluffs.

Second, defendants' advertising could not have been the basis for the jury's verdict. None of the causes of action submitted to the jury involved advertising—no claim of false advertising, for instance. And there is no evidence in the record that the jury heard testimony about or considered as evidence either the newspaper articles or the construction sign. The court concludes that the jury's verdict was not based on defendants' advertising actions.

### 2. The Policy

The court turns to the Policy's terms to determine whether defendants' conduct was covered. Defendants rely on the Policy's provision that covers advertising injury for the insured's "misappropriation of advertising ideas or style of doing business." In a similar case, this court defined that precise provision as follows:

- "Misappropriation" means "wrongful taking"
- "advertising idea" means "an idea concerning the solicitation of business and customers"
- "style of doing business" means "a company's plan for interacting with customers and getting their business."

*See Triple M Fin. Co. v. Universal Underwriters Ins. Co.*, No. 04-02194, 2005 U.S. Dist. LEXIS 8815 at 22–23 (D. Kan. 2005) (citing *Green Machine Corp. v. Zurich-American Ins. Co.*, 313 F.3d 837, 841 (3d Cir. 2002)). Even assuming defendants wrongfully took the *Christie I* Plaintiffs' PowerPoint, defendants' argument fails.

First, the PowerPoint itself is not an idea concerning the solicitation of business and customers, and it is not a plan for interacting with customers and getting their business. While the *Christie I* Plaintiffs suggested using the PowerPoint to convey their "original concept," including their hand-

-6-

drafted layout of The Bluffs, the proprietary nature of the PowerPoint was that underlying "original concept"—*not the PowerPoint as a method of soliciting business or interacting with customers*. In other words, defendants did not misappropriate the *Christie I* Plaintiffs' **idea** of using the PowerPoint to convey their concept; rather, defendants misappropriated the original concept for The Bluffs, which the PowerPoint merely conveyed.  Courts have rejected similar arguments from defendants.  *See Feldman Law Grp., P.C. v. Liberty Mut. Ins. Co.*, 476 F. App'x 913, 916 (2d Cir. 2012) ("It is well established that '[m]erely advertising a misappropriated product does not cause an advertising injury'; to inflict a covered advertising injury, the advertisement, and not the product being advertised, must itself infringe the underlying plaintiff's rights.") (quoting *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 748 (3d Cir. Pa. 1999) ("[T]he complaint does not allege that Frog misappropriated methods of gaining customers; it alleges that Frog misappropriated information about the manufacture of dipper buckets and then advertised the resulting product.")); *Simply Fresh Fruit, Inc. v. Cont'l Ins. Co.*, 94 F.3d 1219 (9th Cir. 1996) (holding that an insurer had no duty to defend under an advertising-injury provision where the third party's allegations concerned the misappropriation of trade secrets which related to the methods for processing fruit rather than advertising or marketing); *see cf. Sentex Sys., Inc. v. Hartford Acc. & Indem. Co.*, 93 F.3d 578, 580 (9th Cir. 1996) ("It is significant that ESSI's claims for misappropriation of trade secrets relate to marketing and sales and not to secrets relating to the manufacture and production of security systems.").

Second, the Policy unambiguously requires that the advertising injury be committed "in the course of advertising [the insured's] goods, products or services."  (Doc. 72-8 at 23.)  Courts interpret similar, if not identical, provisions as requiring causation.  *See DISH Network Corp. v. Arch Specialty Ins. Co.*, 659 F.3d 1010, 1018 (10th Cir. 2011) (discussing *Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc.*, 97 F. Supp. 2d 913 (S.D. Ind. 2000), *St. Paul Fire & Marine Ins. Co. v. Advanced*

*Interventional Sys., Inc.*, 824 F. Supp. 583 (E.D. Va. 1993), *aff'd sub nom*, *St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys., Inc.*, 21 F.3d 424 (4th Cir. 1994), and *Auto Sox USA Inc. v. Zurich N. Am.*, 88 P.3d 1008 (Wash. App. 2004)). Simply put, "the alleged 'advertising activity' which causes the injury must occur *in the very act of advertising*." *Davila v. Arlasky*, 857 F. Supp. 1258, 1263 (N.D. Ill. 1994) (emphasis added); *see also GRE Ins. Group/Tower Ins. Co. v. Complete Music, Inc.*, 271 F.3d 711, 713 (8th Cir. 2001) ("Where [copyright] infringement is the offense, the policy language would appear to require that the infringement occur *during the course of advertising*.") (emphasis in the original). Here, defendants have failed to establish that their advertising activities caused the injury to the *Christie I* Plaintiffs.

As noted earlier, wrongful dissociation of the joint venture and breaches of the joint venture agreement and fiduciary duties are the occurrences. None of those occurrences occurred during the course of advertising. Significantly, the PowerPoint was presented to the City Commission by both the *Christie I* Plaintiffs and defendants. This presentation secured the approval of the plan and various tax incentives. Only after securing approval did defendants wrongfully dissociate the joint venture, thereby breaching their agreement and fiduciary duties. There is no evidence the PowerPoint was used in any capacity by defendants after the breach, so defendants' use of the PowerPoint does not seem to have caused the *Christie I* Plaintiffs' injuries.

For the above reasons, the court finds there are no genuine issues of material fact indicating that State Farm had a duty to indemnify defendants. Because the court finds that State Farm has no duty to indemnify the insured in the first instance, the court need not resolve whether the Policy covers the insured's employee, Mr. Glenn.

**B. Defendants' Counterclaim for Breach of Contract**

Finally, defendants' have alleged a counterclaim, asserting that State Farm breached its contract by refusing to settle the case for less than the Policy limits and that it did so in bad faith. A finding of bad faith is required to hold an insurer liable for a settlement or judgment in excess of an insured's policy limits. *Brockmann v. Bd. of Cnty. Comm'rs of Cnty. of Shawnee*, 404 F. App'x 271, 284 (10th Cir. 2010) (citing *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 804 P.2d 1012, 1021–23 (Kan. Ct. App. 1991)). "An insurance company should not be required to settle a claim when there is a good faith question as to whether there is coverage under its insurance policy. If there is no coverage, there is no fiduciary relationship between the tortfeasor and the insurance company." *Snodgrass*, 804 P.2d at 1022.

Here, the court finds that State Farm had a good faith basis to question whether the Policy covered defendants' conduct. Indeed, this court found no coverage under the "advertising injury" provision. Defendants' argument is also entirely conclusory—mostly consisting of defendants' own interpretation(s) of the reasons for State Farm's decision not to settle the claim. "Something more than a mere error of judgment is necessary to constitute bad faith." *Brockmann*, 404 F. App'x at 284 (citing *Glenn v. Fleming*, 799 P.2d 79, 85 (Kan. 1990)). Defendants have not demonstrated something more than State Farm's "fail[ure] to prophesy the result." *Glenn*, 799 P.2d at 85. Accordingly, defendants' counterclaim for breach of contract (Doc. 60) is dismissed with prejudice.

**IT IS THEREFORE ORDERED** that plaintiff's Amended Motion for Summary Judgment (Doc. 72) is granted.

**IT IS FURTHER ORDERED** that defendants' counterclaim is dismissed with prejudice.

**IT IS FURTHER ORDERED** that pursuant to Rule 52(a), Fed. R. Civ. P., the court finds in favor of State Farm Fire and Casualty Company on its claim for declaratory judgment. The Clerk is directed to enter judgment for State Farm Fire and Casualty Company.

Dated this 23rd day of February, 2015, at Kansas City, Kansas.

                                                            s/ Carlos Murguia
                                                            **CARLOS MURGUIA**
                                                            **United States District Judge**